IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JANUARY 19, 2006 Session

## J. O. HOUSE v. J. K. EDMONDSON

**Direct Appeal from the Chancery Court for Shelby County**
**No. 99-0326-02      Arnold B. Goldin, Chancellor**

_____

**No. W2005-00092-COA-R3-CV - Filed May 16, 2006**

_____

**PARTIAL DISSENT**

_____

I concur fully in the majority opinion, except for its conclusion that summary judgment was inappropriate on House's separate claim of breach of contract against Edmondson, based on breach of the Pre-Incorporation Agreement. From this conclusion, I must dissent.

In *Goot v. Metropolitan Government of Nashville*, No. M2003-02013-COA-R3-CV (Nov. 9, 2005) 2005 WL 3031638 (Tenn. Ct. App.), relied on by the majority, this Court adopted the "discovery rule" as applicable to breach of contract claims under limited circumstances. The *Goot* court indicated that the discovery rule would apply in situations in which the breach of contract was "inherently undiscoverable." *Id.* At *11. The court stated that this standard would be met "when the injured party is unlikely to discover the wrong during the limitations period despite due diligence. To be inherently undiscoverable, the wrong and injury must be unknown to the plaintiff because of their very nature and not because of any fault of the plaintiff." *Id.* At *11 n.311 (citation omitted).

This standard was certainly met in *Goot*. *Goot* involved life insurance for several employees of Nashville Metropolitan Government through their employment. The premiums were paid by the Metropolitan Government. Employees who became disabled could maintain their life insurance without continuing to pay the insurance premiums that had been paid by the Metropolitan Government while they were active employees, so long as the employee applied for the waiver-of-premium benefit within two years after being found eligible for a disability premium.

The plaintiffs were spouses of deceased Metro employees who had become disabled for a period of time before their deaths. The deceased spouses were not informed of the waiver-of-premium benefit within two years after being found eligible for a disability pension. Consequently, the surviving spouses received substantially reduced life insurance benefits. The disadvantaged surviving spouses later learned that they would have received the increased life insurance benefits had the decedent employees been timely informed of the waiver-of-premium benefit. The surviving spouses sued Metro, alleging that Metro breached its employment contract with the deceased employees by failing to timely inform the employees of the benefit.

In *Goot*, Metro asserted that the breach of contract claim filed by the surviving spouses was time-barred by the six-year statute of limitations applicable to breach of contract claims. The surviving spouses claimed that they were unaware of the breach during the limitations period, and urged this Court to apply the discovery rule to the breach of contract claim.

On appeal, the *Goot* Court applied the discovery rule, but only in limited circumstances where the breach of contract is "inherently undiscoverable," that is, where "the wrong and injury [are] unknown to the plaintiff because of their very nature and not because of any fault of the plaintiff." *Id.* at *11 n.31. The plaintiff surviving spouse alleged that she and her deceased husband were not aware of the waiver-of-premium benefit. The *Goot* Court stated:

> It would be unreasonable and unrealistic to impute either to [the deceased employee or the surviving spouse] independent knowledge of the details of the group life insurance policy that the Metropolitan Government had purchased or of the provision in the Metropolitan Code requiring that a waiver of premium be included in the group life insurance contract. Thus, for the purposes of the discovery rule, it would have been difficult for [the deceased employee and the surviving spouse] to be aware of or discover that the Metropolitan Government had breached its contract in 1987 by filing to inform them of the existence of the waiver of premium benefit.

*Id.* at *12. The *Goot* Court therefore reversed the grant of summary judgment on the basis of the statute of limitations, holding that the plaintiff could invoke the discovery rule and that the complaint was timely filed. *Id.* at *12.

Like *Goot*, the instant case is an appeal from a grant of summary judgment, and House should be permitted to assert the discovery rule if the trier of fact could reasonably conclude that Edmondson's alleged breach of contract was "inherently undiscoverable," that is, House was unlikely to discover Edmondson's breach during the limitations period even if House exercised due diligence.

Even though *Goot* was decided after the trial court rendered its decision below, the facts on the issue of whether House could have discovered the breach are well-developed in the record. Indeed, since House asserted that the statute of limitations should have been tolled because he was unaware of Edmondson's breach, the issue was directly addressed by the Special Master, Michael McLaren, in his report to the trial court. The Special Master stated:

> [U]nder Tennessee law, corporations are required to hold a shareholders meeting at least annually. These meetings are to be held after proper notice has been given and a record date has been set. If no meeting is held within six months after the end of a corporation's fiscal year, or if fifteen months have passed since the last shareholder meeting, then any shareholder may request that a court order a meeting. See T.C.A. § 48-17-1l01 and 103. (Exhibits 11 & 12)

The shares which Edmondson purchased, allowing him to acquire 62% ownership of the corporation, were sold to him anywhere from 12-32 years ago. In that time period, shareholder meetings were probably held, albeit informally, where it must have been apparent, based on the nature of this closely held corporation, that Edmondson had acquired the majority of the shares. Any time an issue was voted, Edmondson controlled the corporation. In the event no meetings were ever held, shareholders could have but did not request a meeting, nor did any shareholders invoke T.C.A. § 48-17-101 and 103, to seek a meeting.

Therefore, either Mr. House acquiesced to Edmondson's purchases (which were always signed by Mr. Heath (House's partner) and Edmondson as president of Ram-Tenn), or else for roughly thirty-years, House slept on his rights, never called a shareholders meeting, or else never attended meetings, but did not object to Edmondson's control or acquisitions.

Either way, the sale of the shares over the nearly thirty year time period, is extremely unlikely to be overturned by a Court.

As to the issue of fraud tolling any relevant statute of limitations, concealment is necessary. Although the transfers might have been improper for violating the shareholders agreement, they certainly were not concealed. Tennessee Code Annotated § 48-18-60-1, allows a one (1) year statute of limitations with a statute of repose of three (3) years, except for fraudulent concealment which tolls the statute of repose until the fraud is discovered. (Exhibit 13)

House probably knew of Edmondson's acquisition of the shares (see exhibit hereto regarding one of the transfers), and that Edmondson was the majority shareholder, but House did not object until grounds for a grievance arose between the two shareholders.

The statute of limitations has most likely run as to the stock transfer issue due to House's acquiescence, and the public nature of the transactions. As such, this lawsuit should not go forward as to the issue of stock transfers in violation of the shareholders agreement as raised in Part II - Injunctive Relief, Paragraph 3 of Plaintiff's Complaint.

In his Conclusions and Recommendations, the Special Master stated:

After a great deal of work on this matter, some definite conclusions can be drawn:

3. That little or no effort was made to conceal the misappropriations, and the sums misappropriated would have been apparent to anyone reviewing the books, accounts, and records, including checking accounts of Ram-Tenn.
4. That Edmondson and House are both extremely sophisticated hotel/motel businessmen, familiar with all aspects of that business.
5. That House, in particular, is and has been an extremely sophisticated and knowledgeable businessman and shareholder of Ram-Tenn.

-3-

6.    That little or no effort was made by <u>any</u> shareholder to monitor or even inquire as to the affairs of Ram-Tenn, Inc., until shortly before the subject lawsuit was filed.

7.    That Edmondson was given complete and total authority to run and operate Ram-Tenn completely unfettered by shareholder questions, concerns or inquires, until the subject lawsuit was filed.

Thus, the Special Master noted that, for over thirty years, Edmondson had openly exercised his controlling interest in the corporation and House did not object. He concluded that either House in fact knew of Edmondson's acquisition of the stock and acquiesced, "or else for roughly thirty-years, House slept on his rights, never called a shareholders meeting, or else never attended meetings. . . ."

In ***Goot***, the Court reversed the grant of summary judgment, finding that it was unreasonable to impute to the deceased Metro employee or the surviving spouse independent knowledge of the details of the group life insurance policy secured by Metro Government for its employees. Under these circumstances, the Court found that a factual issue existed as to whether the breach was unknown to the plaintiff because of its "very nature and not because of any fault of the plaintiff," i.e. it was "inherently undiscoverable." ***Goot***, at *11 n.31.

In contrast, in this case, assuming that House did not in fact know that Edmondson had acquired additional shares in violation of the Pre-Incorporation Agreement, the trier of fact simply could not reasonably find that House's lack of knowledge was because of the "very nature" of Edmondson's breach "and not because of any fault" of House. The Special Master did not make any finding of fact on whether House was actually aware of Edmondson's acquisition of the shares, instead he stated the obvious, that if House did not know, it had to be because "House slept on his rights for approximately thirty years." Under these circumstances, no trier of fact could reasonably conclude that Edmondson's alleged breach was "inherently undiscoverable," and that House's claim would not be barred by the six-year statute of limitations.

Therefore, I must respectfully dissent, and I would affirm the trial court's grant of summary judgment on all counts.

_____
HOLLY M. KIRBY, JUDGE

-4-